LAW OFFICES
WATERFALL ECONOMIDIS CALDWELL
HANSHAW & VILLAMANA, P.C.
WILLIAMS CENTER, EIGHTH FLOOR
5210 EAST WILLIAMS CIRCLE, SUITE 800
TUCSON, ARIZONA 85711
Telephone: (520) 790-5828
Facsimile: (520) 745-1279

Steven M. Cox, SBN 005094
Attorneys for PIMA FEDERAL CREDIT UNION

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| In re: | No. 4-10-bk-17627-EWH |
| JOSEPH E LUPO AND LADESKA ANN LUPO, | (Chapter 13) |
| Debtors. | **OBJECTION TO CONFIRMATION OF DEBTORS' PROPOSED CHAPTER 13 PLAN** |

Pima Federal Credit Union, by and through its attorneys undersigned, hereby files its Objection to Confirmation of Debtors' Proposed Chapter 13 Plan of Reorganization (the "Objection"), based upon the following:

1.  Pima Federal Credit Union holds an interest in the following the Vehicle described below;

2.  The 2002 GMC SIERRA 1500 EXTENDED CAB DENALI 4D, VIN 2GTFK69U321295826, and all accessories thereto in possession of Debtors, under a contract dated May 26, 2007 (the "Contract"), a copy of which is attached hereto as Exhibit "A" and is incorporated herein by this reference. Evidence of Pima Federal Credit Union's interest in the Vehicle is attached hereto as Exhibit "B" and is incorporated herein by this reference.

3. The net payoff due on the Debtors' account, as of the petition date, was $17,503.81, together with interest accruing thereon at the contract rate of 8.5%. Debtors' Chapter 13 Plan proposes to pay the secured claim of Pima Federal Credit Union a secured value of $12,500.00 together with interest accruing thereon at 6.0%. While the interest rate may be acceptable the value is too low and unacceptable to Movant. Also, Debtors' plan does not propose an adequate protection payment and therefore fails to meet the requirement of §1326(a)(1)(C) of the Bankruptcy Code, and Local Rule 2084-6, requiring adequate protection payments of 1% of value from month one of the Plan to be paid to Pima Federal Credit Union directly. The Kelley Blue Book Karpower value for this Vehicle is $16,360.00, See Code §506(a)(2).

4. Pursuant to 11 U.S.C. §506(a)(2), a creditor has an allowed secured claim in the amount equal to the value of the collateral. Based upon the market Kelley Blue Book Karpower for Arizona, and §506(a)(2), the market value for this particular vehicle is $16,360 in good condition. See the attached Kelley Blue Book Breakdown, (Exhibit C). Pima Federal Credit Union alleges that the value of the collateral is $16,360 and therefore objects to confirmation of Debtors Chapter 13 Plan based upon Debtors proposal to pay only $12,500.00 as a secured claim. *See In re Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) (value of collateral and thus amount of the secured claim, is price willing buyer would pay to obtain like property from willing seller). See also Code §506(a)(2). Monthly adequate protection should be set at 1% of this value, which is $164.00 per month.

5. Pima Federal Credit Union does not object to the interest rate stated in the Plan. Pima Federal Credit Union is entitled to market interest, so the interest for Pima Federal Credit Union's secured claim in this case should be at least 6.0% per annum.

6.  The Debtors' Plan does not provide for adequate assurance payments. Pima Federal Credit Union alleges that adequate assurance payments should be made at a rate of **$164** per month, duly allowed as a lien and payable monthly and directly to Pima Federal Credit Union, from the Trustee and be paid each month directly by the Debtors to the Trustee during the case, from month one of the Plan until regular Plan payments to Pima Federal Credit Union begin; and upon dismissal or conversion of the case, as required by Code §1326(a)(1)(C) and Local Bankruptcy Rule 2084-6(b).

7.  Pima Federal Credit Union further objects to any Plan provision which provides that Pima Federal Credit Union's security interest will terminate upon payment of the allowed secured claim. Pima Federal Credit Union asserts that its lien will not terminate until such time as the Debtors fully consummate the Chapter 13 Plan and are discharged, pursuant to BAPCPA (10/17/05).

WHEREFORE, for all of the above grounds, Pima Federal Credit Union respectfully requests that this Court deny confirmation of the Debtors' proposed Chapter 13 Plan of Reorganization.

RESPECTFULLY SUBMITTED this 25th day of June, 2010.

**WATERFALL ECONOMIDIS CALDWELL HANSHAW & VILLAMANA, P.C.**

By _Steven M. Cox_
Steven M. Cox
Attorneys for GMAC


PIMA FEDERAL CREDIT UNION
P.O. Box 50267
Tucson, AZ 85703
(520) 887-5010



## LOAN AND SECURITY AGREEMENT AND DISCLOSURE STATEMENT

| LOAN DATE | LOAN NUMBER | ACCOUNT NUMBER | GROUP POLICY NUMBER | MATURITY DATE |
|---|---|---|---|---|
| 05/26/07 | | 6747- | | 06/10/2013 |

### BORROWER 1
NAME AND ADDRESS

JOSEPH E. LUPO
4537 S. FENWICK DR
TUCSON AZ 85730

### BORROWER 2
NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1)

LADESKA LUPO
4537 S. FENWICK DR
TUCSON AZ 85730

### TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit is $N/A which includes your downpayment of $N/A |
| 8.500 % | $7130.89 | $25033.92 | $32164.81 | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 71 | $ 446.78 | MONTHLY BEGINNING 07/10/2007 |
| 1 | $ 443.43 | 06/10/2013 |

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the credit union. If you get the insurance from us, you will pay $N/A

**Late Charge:** 10% of scheduled payment or $10.00, whichever is greater.

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

[X] **Assumption:** Someone buying your mobile home cannot assume the remainder of the loan on the original terms.

**Demand:** [X] This obligation has a demand feature.
[ ] All disclosures are based on an assumed maturity of one year.

| Filing Fees | Non-Filing Insurance |
|---|---|
| $N/A | $N/A |

**Security:** Collateral securing other loans with the credit union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the credit union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| GMC SIERRA | DENALI | 2002 | 2GTFK69U321295826 | 12PU 4DR | $ $ $ | |

Other (Describe)
Pledge of Shares $ _____ in Account No. _____ $ _____ in Account No. _____

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### SIGNATURES

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.** By signing a Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign as "Owner of Property" you agree only to the terms of the Security Agreement.

X _[signature]_ (SEAL) 5/26/07
BORROWER 1                              DATE

X (SEAL)
[ ] OTHER BORROWER  [ ] OWNER OF PROPERTY  [ ] WITNESS    DATE

X _[signature]_ (SEAL) 5/26/07
BORROWER 2                              DATE

X _[signature]_ (SEAL) 5/26/07
[ ] OTHER BORROWER  [ ] OWNER OF PROPERTY  [X] WITNESS    DATE

# EXHIBIT A

© CUNA MUTUAL GROUP, 1999, 2000, 01, 02 ALL RIGHTS RESERVED

NXX024 ILAS

Credit Union PIMA Federal Credit Union  Loan No. ▓▓▓▓▓  Acct. No. ▓▓5747-▓
Borrower(s) JOSEPH E. LUPO  LADESKA LUPO

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of $25033.92 | Amount Given to You Directly $ | Amount Paid on Your Account $23835.39 | Prepaid Finance Charge $0.00 |
|---|---|---|---|

Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| $ | 898.53 | To CARD SERVICES | $ | | To |
| $ | | To | $ | | To |
| $ | | To | $ | | To |
| $ | | To | $ | | To |
| $ | | To | $ | | To |
| $ | | To | *$ | 300.00 | To GAP COVERAGE |
| *$ | M/A | To MECHANICAL BREAKDOWN COVERAGE | *$ | M/A | To SINGLE PREM LIFE/DISBABILITY |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose nam appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean eac person who signs this Agreement as a borrower.

**1. PROMISE TO PAY -**

You promise to pay $ 25033.92 to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is 8.500 % per year.

**Collection Costs:**
You agree to pay all costs of collecting the amount you owe under this Agreement, including court costs and reasonable attorney fees.

**2. PAYMENTS -** You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect credit insurance, we will either include the premium in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan.
**3. LOAN PROCEEDS BY MAIL -** If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.
**4. SECURITY FOR LOAN -** This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. A dwelling secures this loan only if it is described in the "Security" section of the Truth in Lending Disclosure for this loan. *If Credit Union has a federal charter:* Statutory Lien - If you are in default on a financial obligation to us, federal law give us the right to apply the balance of shares and dividends in all individual and joint accounts you have with us to satisfy that obligation. After you are in default, we may exercise this right without further notice to you. (We have a federal charter if our name includes the term "Federal Credit Union.") *If Credit Union has a state charter, except in Ohio and Rhode Island:* We have a statutory lien on the shares and dividends and, if any, the deposits and interest in all individual and joint accounts you have with us and may exercise our rights under the lien to the extent permitted by state law. (We have a state charter if our name does not include the term "Federal Credit Union.") *For all borrowers:* You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the credit union now and in the future. **The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default.** The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.
**5. DEFAULT -** You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you brea any promise you made in connection with this loan or anyone is in default under any security agreement made connection with this Agreement. You will be in default if yc die, file for bankruptcy, become insolvent (that is, unable 1 pay your bills and loans as they become due), or if you mac any false or misleading statements in your loan applicatior You will also be in default if something happens that w believe may seriously affect your ability to repay what yc owe under this Agreement or if you are in default under ar other loan agreement you have with us.
**6. ACTIONS AFTER DEFAULT -** When you are in default, w may demand immediate payment of the entire unpai balance under this Agreement. You waive any right you hav to receive demand for payment, notice of intent to deman immediate payment and notice of demand for immediat payment. If we demand immediate payment, you w continue to pay interest at the rate provided for in th Agreement, until what you owe has been repaid. We w also apply against what you owe any shares and/or deposi given as security under this Agreement. We may als exercise any other rights given by law when you are i default.
**7. EACH PERSON RESPONSIBLE -** Each person who sigr this Agreement will be individually and jointly responsible fi paying the entire amount owed under this Agreement. Th means we can enforce our rights against any one of yc individually or against all of you together.
**8. LATE CHARGE -** If you are late in making a payment, yc promise to pay the late charge shown in the Truth in Lendir Disclosure. If no late charge is shown, you will not b charged one.
**9. DELAY IN ENFORCING RIGHTS -** We can delay enforcir any of our rights under this Agreement any number of time without losing the ability to exercise our rights later. We ca enforce this Agreement against your heirs or leg representatives.
**10. CONTINUED EFFECTIVENESS -** If any part of th Agreement is determined by a court to be unenforceable, tł rest will remain in effect.
**11. NOTICES -** Notices will be sent to you at the mo: recent address you have given us in writing. Notice to ar one of you will be notice to all.
**12. OTHER PROVISIONS -**

© CUNA MUTUAL GROUP. 1999, 2000, 2001. ALL RIGHTS RESERVED  NXX024 (LAS)

Credit Union PIMA FEDERAL CREDIT UNION  Loan No. ▓▓▓▓  Acct. No. ▓▓5747-▓
Borrower(s) JOSEPH E. LUPO          LADESKA LUPO

## SECURITY AGREEMENT

In this Agreement all references to "credit union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the credit union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you," or "your" mean any person who signs this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS** - The Property secures the Loan and any extensions, renewals or refinancings of the Loan. If the Property is not a dwelling, it also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal residence. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal residence, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees insurance to the unpaid balance of the Loan, we may increase yc payments to pay the amount added within the term of the insuran or term of the Loan.

**7. INSURANCE NOTICE** - If you do not purchase the requir property insurance, the insurance we may purchase and charge y for will cover only our interest in the Property. The insurance v not be liability insurance and will not satisfy any state financ responsibility or no fault laws.

**8. DEFAULT** - You will be in default if you break any promise y make or fail to perform any obligation you have under tl Agreement. You will also be in default under this Agreement if t Loan is in default.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are default, we may demand immediate payment of the outstandi balance of the Loan without giving you advance notice and ta possession of the Property. You agree the Credit Union has the ric to take possession of the Property without judicial process if tl can be done without breach of the peace. If we ask, you promise deliver the Property at a time and place we choose. We will not responsible for any other property not covered by this Agreeme that you leave inside the Property or that is attached to t Property. We will try to return that property to you or make available to you to claim.

After we have possession of the Property, we can sell it and apr the money to any amounts you owe us. We will give you notice any public sale or the date after which a private sale will be hel Our expenses for taking possession of and selling the Property v be deducted from the money received from the sale. Those cos may include the cost of storing the Property, preparing it for sa and attorney's fees to the extent permitted under state law awarded under the Bankruptcy Code. The rest of the sale mon will be applied to what you owe under the Loan.

If you have agreed to pay the Loan, you will also have to pay a amount that remains unpaid after the sale money has been appli to the unpaid balance of the Loan and to what you owe under tl Agreement. You agree to pay interest on that amount at the sar rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAI** We can delay enforcing any of our rights under this Agreement a number of times without losing the ability to exercise our righ later. We can enforce this Agreement against your heirs or leç representatives. If we change the terms of the Loan, you agree th this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement determined by a court to be unenforceable, the rest will remain effect.

**12. NORTH DAKOTA NOTICE TO BORROWERS PURCHASING MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTIC MAY BE SUBJECT TO REPOSSESSION. IF IT IS NC REPOSSESSED AND SOLD TO SOMEONE ELSE, AND A AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawf for you to fail to return a motor vehicle that is subject to a securi interest, within thirty days after you have received notice of defau The notice will be mailed to the address you gave us. It is yo responsibility to notify us if your address changes. The maximu penalty for unlawful failure to return a motor vehicle is one year prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marke*
**14. NOTICE: ANY HOLDER OF THIS CONSUMER CRED CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSE WHICH THE DEBTOR COULD ASSERT AGAINST TH SELLER OF GOODS OR SERVICES OBTAINED PURSUAN HERETO OR WITH THE PROCEEDS HEREOF. RECOVER HEREUNDER BY THE DEBTOR SHALL NOT EXCEE AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**15. OTHER PROVISIONS -**

© CUNA MUTUAL GROUP, 1999, 2000, 2001 ALL RIGHTS RESERVED    NXX024 ilAS

| Credit Union | PIMA FEDERAL CREDIT UNION | | Loan No. ██████ | |
|---|---|---|---|---|

| BORROWER 1 NAME AND ADDRESS | BORROWER 2 NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |
|---|---|
| JOSEPH E. LUPO<br>4537 S. FENWICK DR<br>TUCSON AZ 85730 | LADESKA LUPO<br>4537 S. FENWICK DR<br>TUCSON AZ 85730 |

| Collateral | Property/Model/Make | Year | I.D. Number | Lien Amount | Value | Key Number |
|---|---|---|---|---|---|---|
| GMC SIERRA | DENALI | 2002 | 2GTFK69U321295826 | $<br>$<br>$ | $<br>$<br>$ | |

Other (Describe)
Pledge of Shares $ _____ in Account No. _____   $ _____ in Account No. _____

## SECURITY AGREEMENT

In this Agreement all references to "credit union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the credit union assigns or transfers this Agreement. All references to the "Loan" mean the loan with the loan number specified above. All references to "you," or "your" mean any person who signs this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section above ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS** - The Property secures the Loan and any extensions, renewals or refinancings of the Loan. If the Property is not a dwelling, it also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal residence. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal residence, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so. If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase yo payments to pay the amount added within the term of the insurance or te of the Loan.

**7. INSURANCE NOTICE** - If you do not purchase the required proper insurance, the insurance we may purchase and charge you for will cov only our interest in the Property. The insurance will not be liability insuran and will not satisfy any state financial responsibility or no fault laws.

**8. DEFAULT** - You will be in default if you break any promise you make, fail to perform any obligation you have under this Agreement. You will al: be in default under this Agreement if the Loan is in default.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are in defau we may demand immediate payment of the outstanding balance of the Lo without giving you advance notice and take possession of the Property. Y agree the Credit Union has the right to take possession of the Proper without judicial process if this can be done without breach of the peace. we ask, you promise to deliver the Property at a time and place we choos We will not be responsible for any other property not covered by th Agreement that you leave inside the Property or that is attached to tl Property. We will try to return that property to you or make it available you to claim.

After we have possession of the Property, we can sell it and apply t money to any amounts you owe us. We will give you notice of any pub sale or the date after which a private sale will be held. Our expenses f taking possession of and selling the Property will be deducted from t money received from the sale. Those costs may include the cost of stori the Property, preparing it for sale and attorney's fees to the exte permitted under state law or awarded under the Bankruptcy Code. The re of the sale money will be applied to what you owe under the Loan.

If you have agreed to pay the Loan, you will also have to pay any amou that remains unpaid after the sale money has been applied to the unpa balance of the Loan and to what you owe under this Agreement. You agr to pay interest on that amount at the same rate as the Loan until th amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We c delay enforcing any of our rights under this Agreement any number of tim without losing the ability to exercise our rights later. We can enforce tl Agreement against your heirs or legal representatives. If we change t terms of the Loan, you agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement determined by a court to be unenforceable, the rest will remain in effect.

**12. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOT( VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY ! SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD 1 SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY A! NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY TI DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for y( to fail to return a motor vehicle that is subject to a security interest, with thirty days after you have received notice of default. The notice will mailed to the address you gave us. It is your responsibility to notify us your address changes. The maximum penalty for unlawful failure to returr motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*

**14. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COU! ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAIN! PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVEI HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID ! THE DEBTOR HEREUNDER.**

**15. OTHER PROVISIONS** -

## SIGNATURES

By signing below, you agree to the terms of this Security Agreement.

| X _[signature]_ (SEAL) _7/26/07_ | X _[signature]_ (SEAL) _7/26/07_ |
|---|---|
| OWNER OF PROPERTY    DATE | OWNER OF PROPERTY    DATE |
| X _____ (SEAL) _____ | X _[signature]_ (SEAL) _5/26/__ |
| ☐ OWNER OF PROPERTY  ☐ WITNESS   DATE | ☐ OWNER OF PROPERTY  ☒ WITNESS   DATE |

© CUNA MUTUAL GROUP 1999, 2000, 2001 ALL RIGHTS RESERVED                                                                                                     NXX024 (LAS

# ARIZONA CERTIFICATE OF TITLE

**Motor Vehicle Division** (ADOT)
48-7200 R09/03

Inventory Control: 452362

| Vehicle Identification Number | Year | Make | Model | Body Style |
|---|---|---|---|---|
| 2GTFK69U321295826 | 2002 | GMC | DNL | 12PU |

First Registered: 04/2002
List Price: 043385
Mobile Home Manufacturer:
Unit Number:

PIMA FCU
PO BOX 50267
TUCSON AZ 85703

| Title Number | Issue Date | Film Number | Odometer Reading (no tenths) |
|---|---|---|---|
| AZ80006006090 | 01062006 | G006AZ8038 | 0041674 A |

Previous Title Number: A88721E074001  State: AZ
Issue Date: 03152002
Previous Film Number: C074O8L201

A - Actual Mileage
B - Mileage in excess of the odometer mechanical limits
C - NOT Actual Mileage, WARNING ODOMETER DISCREPANCY

Arizona Brands:
Previous Brand: | State: Previous Brand: | State: Previous Brand: | State: Other States With Brands:

Owners/Lessees:
JOSEPH E LUPO                                       OR
4537 S FENWICK DR        TUCSON        AZ 85730
LADESKA A LUPO

Lienholders:
FIRST LIEN-
PIMA FCU                                    LIEN DATE: 12032005

PO BOX 50267        TUCSON        AZ 85703

**LIEN RELEASE**

| Lienholder Name | | | | Acknowledged before me this date | Notary Public Signature | |
|---|---|---|---|---|---|---|
| Lien Amount | Lien Date | Lienholder Signature | | Date | County | State | Commission Expires |

VOID WITHOUT EAGLE ... LTERED OR ERASED

**EXHIBIT B**

License Plate # N/A                                      Stock #N/A
                                                         Jun 10, 2010

# Wholesale Lending/Retail Breakdown
## Kelley Blue Book
### Effective dates: 6/4/2010-6/10/2010

2002 GMC Sierra 1500 Extended Cab Denali 4D..................................... $11,050/$14,900

VIN: 2GTFK69U321295826

| | |
|---|---|
| V8, 6.0 Liter.................................................................... | Included |
| Automatic........................................................................ | Included |
| AWD................................................................................ | Included |

*** Equipment ***

| | | | |
|---|---|---|---|
| Quadrasteer........................ | 0/0 | Premium Sound......................... | 150/200 |
| Air Conditioning................... | 0/0 | OnStar.................................... | 0/0 |
| Power Steering..................... | 0/0 | Dual Air Bags......................... | 0/0 |
| Power Windows.................... | 0/0 | ABS (4-Wheel)....................... | 0/0 |
| Power Door Locks................. | 0/0 | Leather................................... | Included |
| Tilt Wheel........................... | 0/0 | Dual Power Seats.................... | 0/0 |
| Cruise Control..................... | 0/0 | Running Boards...................... | 200/265 |
| AM/FM Stereo..................... | 0/0 | Towing Pkg............................. | 200/265 |
| Cassette.............................. | 0/0 | Premium Wheels..................... | 275/365 |
| CD (Multi Disc).................... | 275/365 | | |

Fuel City/Hwy    11/14 MPG

| | |
|---|---|
| Total Value without mileage..................................................... | $12,150/$16,360 |
| Mileage Adjustment(104000) miles............................................ | 0 |
| ***Total Wholesale Lending/Retail Value............................... | $12,150/$16,360 |

Pima FCU

6/4/2010-6/10/2010 Kelley Blue Book® KARPOWER Online's(SM) values for Arizona.
Values are subjective opinions. Kelley Blue Book assumes no liability for errors or
omissions as to values, manufacturer or dealer information.
©Copyright Kelley Blue Book 2010. All rights reserved.

**EXHIBIT C**

| | |
|---|---|
| 1 | |
| 2 | COPY of the foregoing mailed this<br>_25_ day of June, 2010, to |
| 3 | |
| 4 | Joseph E Lupo<br>Ladeska Ann Lupo<br>4537 S. Fenwick Dr. |
| 5 | Tucson, AZ 85730<br>Debtors |
| 6 | |
| 7 | Kathryn L. Johnson<br>LAW OFFICES, PLC |
| 8 | 2 E Congress St., #900<br>Tucson, AZ 85701 |
| 9 | Attorney for Debtors |
| 10 | Dianne C. Kerns<br>7320 N. Law cholla #154 PMB 413 |
| 11 | Tucson, AZ 85741-2305<br>Chapter 13 Trustee |
| 12 | |
| 13 | _/s/_ |

-4-